**REQUEST FOR 90 DAYS STAY ON FURTHER
PROCEEDINGS AND FOR ISSUANCE OF AN
OSC RE: CONSTITUTIONAL CHALLENGE
AND FOR SERVICE ON THE
STATE OF MARYLAND
[FRCP RULE 65, ET AL.]**

## UNITED STATES DISTRICT COURT

## DISTRICT OF MARYLAND – BALTIMORE

**RDB 16 CV 2249**

PAULA WEBBER, an individual and
as Trustee of the Miah Family Foundation
Trust; MIAH FAMILY FOUNDATION
TRUST, an irrevocable trust;

      Plaintiffs

**CASE NO: RDB 15-CV3014**

**COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF**
Consolidated with Related Case
and for Constitutional Challenge
pursuant to Rule 5.1

v.

STATE OF MARYLAND, by and through
its law enforcement arm Attorney General
Brian E. Frosh; WELLS FARGO BANK, N.A.;
WACHOVIA BANK, N.A.;
WORLD SAVINGS BANK, a trust;
DIANE S. ROSENBERG; KRISTINE D. BROWN;
ROSENBERG & ASSOCIATES, LLC;
TREANOR POPE & HUGHES, P.A.;
SHAPIRO BROWN & ALT, LLC; TAREK ALY; EQUIFAX,
TRANSUNION and EXPERIAN, jointly and severally as
credit reporting agencies, inclusively;
and Does 1-20, as parties yet unknown,

**DEMAND FOR JURY TRIAL**

      Defendants

1.   COMES NOW the Plaintiff Paula Webber, an individual and as Trustee of the Miah Family Foundation Trust, and Plaintiff Miah Family Foundation Trust by its trustee Paula Webber, hereby alleges as follows:

2.   Plaintiff files this an action for equitable relief *and* damages precipitated by the events and acts of defendants resulting in an imminent threat of wrongful foreclosure and for causes and relief as prayed associated therewith.  Plaintiffs are a protected class of individuals as homeowners of real property within the state of Maryland and thus, under the provisions of copious protections as sampled from the Maryland Stats. appended at the complaint's end. [1]  Plaintiffs strongly dispute the validity of the content of a related removed case pending with this court under case number RDB15CV3014 filed on October 6, 2015.  Plaintiff seeks to join this new matter with that removed case for convenience to the court and all parties interested. To date the state related case has in no way been adjudicated.

## PARTIES

3.   Defendants are as appears on the caption and are in some manner responsible for the wrongful and illegal acts complained of herein. Defendants and each of them are national banks, lenders and capital providers of purchase money loans to the public, their agents, officers, managing agents, assignees, successors in interest, bank trusts operating through and under the authority of Pooling and Servicing Agreements, appraisers, notaries, attorneys, actual trustees and holding company or pooling servicing agreement authorized trustees and on *information and belief* are business entities, LLCs and corporations, organized and existed under the laws of the State of Maryland and other jurisdictions, yet unknown who have contacts and are doing business in Maryland.

4.   Defendants STATE OF MARYLAND; WELLS FARGO BANK, N.A.; WACHOVIA BANK, N.A.; WORLD SAVINGS BANK, a trust; TAREK ALY;  DIANE S. ROSENBERG; KRISTINE D. BROWN; ROSENBERG & ASSOCIATES, LLC; TREANOR POPE & HUGHES, P.A.; SHAPIRO BROWN & ALT, LLC; EQUIFAX, TRANSUNION and EXPERIAN, jointly and severally as credit reporting agencies, inclusively, and Does 1-20,  as parties yet unknown,  as parties yet unknown jointly and as credit reporting ///

agencies, inclusively and each of them are and at all times herein mentioned was, a business entity or individual agent or assignee or successor in interest doing business in Maryland.

5.   Defendant NON-ENTITIES ARE INDIVIDUALS with principal places of business

---

[1] See appended at document end.

[2] **RULE 57. DECLARATORY JUDGMENT**
These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. §2201. Rules 38 and

within their county and state.

6.     Reserved.

7.     "All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiffs' Title Thereto" are sued herein pursuant to Maryland Codes.

8.     Plaintiff Miah Family Foundation is the owner of property the subject premises of their action known as **1552 Penzance Way, Hanover, Maryland.** No sale of this property by judicial action has yet been authorized.

9.     Plaintiffs do not know the true names and capacities of the defendants sued herein as DOES 1 through 20 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiffs are informed and believe and based on such information and belief aver that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiffs will amend their Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

10.     Plaintiffs are informed and believe and based on such information and belief aver that Defendants and DOE Defendants 1 through 20, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein.

11.     Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

<u>GENERAL ALLEGATIONS</u>

12.     Plaintiff alleges that plaintiff Miah Family Foundation Trust [hereafter, "MFFT"] is the current legal owner of the subject premises by Grant Deed. Plaintiff Paula Webber is acting in a dual role as an individual and original obligor under the promissory Note and as a Trustee of the MFFT who holds all rights and powers of a trust under the Restatement 3d of the Law of Trusts. In satisfying FRCP Rule 8(a) and Twombly-Iqbal standards the underlying law of the jurisdiction must be alleged in the interest of presenting a "well pled" action. Since this case involves the validity [the question of right to enforce is not reached where the validity is challenged] of a

promissory note, this court may look to the Maryland Code, Commercial Law Article governing such notes that are secured by a deed of trust. Silver Spring Title Co. v. Chadwick, 213 Md. 178, 181, 131 A.2d 489, 490 (1957); LeBrun v. Prosise, 197 Md. 466, 474–75, 79 A.2d 543 (1951); Md.Code Ann., Com. Law § 9–203(g) & cmt. 9 (LexisNexis 2002). The deed of trust [lien] cannot be transferred like a note [as a negotiable instrument]; rather, the corresponding note may be transferred, and carries with it the security provided by the deed of trust. LeBrun, 197 Md. at 474, 79 A.2d at 548. Whether a negotiable instrument, such as a note, is **transferred** or negotiated dictates the enforcement rights of the note's transferee. All transfers of notes have <u>two requirements</u>: the *transferor (any person that transfers the note, except the issuer) must intend to vest in the transferee the right to enforce the instrument* (thieves and accidental transferees are excluded) and *must deliver the instrument so the transferee receives actual or constructive possession*. Com. Law § 3–203(b); 6B Lary Lawrence, Anderson on the Uniform Commercial Code § 3–203:5R (3d ed.2003). A transfer vests in the transferee only the rights enjoyed by the transferor, which may include the right to enforce the instrument. Com. Law. § 3–203(a)–(b). A **negotiation**, by contrast, occurs when a holder—who is either the named payee of an instrument or the transferee of a negotiated instrument—transfers possession of an instrument, payable to bearer, to another. Com. Law § 3–201(a)–(b) & cmt. 1. A <u>negotiation of an instrument payable to an identified person</u>, however, requires the holder to transfer possession and indorse the instrument, i.e., negotiate the instrument. Id. Importantly, <u>only a holder may negotiate an instrument</u>. Com. Law § 3–203 cmt. 1. <u>Thus, a recipient of a transferred instrument is a transferee, but a recipient of a negotiated instrument is a holder</u>. With that distinction in mind, Commercial Law § 3–301 explains that a person <u>entitled to enforce</u> a negotiable instrument may be either of three varieties: "(i) the holder of the instrument, (ii) a non-holder in possession of the instrument who has the rights of a holder [i.e., a transferee] or (iii) a person not in possession of the instrument who is entitled to enforce pursuant to § 3–309."

In this case at bar Ms. Webber challenges that the content and terms of the note is not what she agree to. Second, that she did not sign the Note defendants may assert contains her signature. Where a note content is challenged as incorrectly stated and ownership of rights of ownership are *both* challenged a finding against the lenders on both issues would defeat their ability to enforce both the note and the right to foreclose under the deed of trust. Both of these problems taint then the overall filing and impact of the Order to Docket utilized in this state.

Last, the Maryland foreclosure protocols are challenged as unconstitutional because as implemented it allows documents to be vouched for virtually without challenge by persons including attorneys for banks who have no personal knowledge of the truth or authenticity of the documents used to commence the foreclosure proceeding. This provides an unfair advantage to all borrowers who would challenge the evidence that Maryland "presumes" to be correct without requiring any evidentiary proof other than gross hearsay by incompetent witnesses to the creation of the creation of those documents. It is a matter of judicial notice that the history of processes similar to that in Maryland has been shown to be subject to abuses by the banks and their attorneys who act with great haste to streamline litigation in foreclosure matters.

13.    Plaintiff Paula Webber as an individual, not as a trustee of the Trust, is the obligor under a promissory note dated on or about September 19, 2005, for financing a townhouse at the subject location which is plaintiff's PRIMARY RESIDENCE.  By an interpersonal transfer from Paula Webber to MFFT on November 4, 2013 the legal title was by quit claim deed transferred into the corpus of MFFT, then and now being held as an assed owned by MFFT.

13.a.  There are two Notes and two deeds of trust [hereafter "DOT"s] asserted to be loans for 80% and 20% respectively of an overall transaction which totaled 100% of the actual loan which will be alleged herein below.  Globally, however, the actual original terms of the original notes are disputed by plaintiffs MFFT and Webber who alleged that the original Notes has been lost or destroyed. Evidence will show that the Notes to which defendants may refer in this litigation were NOT the Notes evidencing the debt on this residence, address above, because the terms and conditions of the actual executed Notes were NOT what is reflected in the purported Notes held or asserted to be owned by the current oblige defendant Wells Fargo who holds Notes and DOTS that are fakes, forgeries and not reflective of the true originals. These facts are disputed by both plaintiffs. Paula Webber will alleged that she did not sign the purported Notes or DOT's Wells Fargo asserts it owns.  Moreover, the Deeds of Trust [the lien securing performance and allegedly allowing foreclosure in the event of default] aka Deeds of trust referred to hereafter was NOT signed by the plaintiff Paula Webber who will assert and alleged she did not sign the Deed of trust.  Any assertion of signature executed by a plaintiff offered by any defendant is a ruse as plaintiff Webber never did sign the documents. MFFT nor Webber can be bound by documents that were not properly executed and notarized. There is no existing Note that was signed or notarized in existence.   Any signatures on any such documents are forgeries if they are produced hereafter by any defendant.

13.1. The true and correct terms of the purchase contract **was to have been**: $61,864.91 **down payment, with 80% note was a fixed rate at 5% per annum** with a payment per month at $1,884. The second Note was to be an adjustable rate starting at 5% not to exceed 7% increase to be based on the current LIBOR interest rate commencing at $225.00 and limited to $414.00 capped. The duration of the note was for 30 years with a monthly payment rate on both notes commencing on October 20, 2005, payments due at $2,109.00. Any alleged Notes not reflecting these sums is fraudulent. Moreover, based on calculations of the **payments made** vs. **actually owed**, the actual Note was not in default status and no default would have been justified.

13.2.   This action is subject to the provisions of the Maryland Foreclosure Protection legislation which requires conditions precedent to be satisfied prior to commencement of any foreclosure, but ONLY if the note is proved to be owned by the foreclosing defendant and it is THE actual note borrower signed.  Plaintiff is uncertain of exactly who is the equitable owner of the existing Note or deed of trust or deed of trust associated with the Note, thus, disputing ownership of the rights of any and all defendants or third parties not named herein as parties. Ownership of the Note in Maryland is not an irrebutable presumption nor factual inference and is placed in issue in these pleadings.  Plaintiffs deny that ANY defendant possesses any Note or that the Note in question [should it be "found" by a defendant] was ever signed by the plaintiff who deny such occurred.

14.   Plaintiff's loan including the promissory note, deed of trust, assignments all are subject to the Md. Stats. governing foreclosures in Maryland and the requirements are binding upon any beneficiaries, loan servicers and trustees associated with the underlying promissory note. **Under Maryland land laws Note ownership must be proved as a condition to acting to protect the collection debt rights residing in the deed of trust.** An assignment of a deed of trust/deed of trust without holding the Note rights is not legally effective to convey rights to foreclose. In Maryland, Deed of trust Assistance Relief Service Providers must comply with the Protection of Homeowners in Foreclosure Act (Protection of Homeowners in Foreclosure Act, at Annotated Code of Maryland, Real Property Article, § 7-301 et seq.) when assisting Maryland consumers who are sixty (60) days or more in default on their residential deed of trust loan. Plaintiffs allege inter alia, this provision was violated.

14.1. Moreover, plaintiffs alleged that the law requires that an application for a loan modification program be sent to the homeowner at least 45 days before a foreclosure action is filed. A lender must complete a loss mitigation analysis no later than 30 days before the date of a foreclosure sale. Plaintiffs allege that this requirement was violated.

14.2  The calculations under the actual Note of the true sums due and paid will militate against any existing right to foreclose for 1./ want of the actual note and deed of trust, 2./ even if true and correct, the actual sums were not properly declared in default because they were over stated by over $75,000+, and 3./ the statutory violations warrant no foreclosure as a matter of law.

15.  By judicial notice to all statutes and case law applicable, any material violations of the codes designed to protect consumers from improperly effected foreclosure proceedings are subject to injunction and restraining orders, concomitantly.

16.  Redacted

17.  Plaintiff alleges the content of any terms contained in the Note or DOT [deed of trust] are fully subordinate to the provisions referenced and in the event of a breach, the code provisions govern.

18.  Plaintiff alleges that foreclosing parties have breached contracts guaranteeing and promising to reduce the monthly payments and agreement not to foreclose, damages plaintiff's credit, failed properly account for and credit payments, was overcharged on their note from the time of the closing of escrow to the present resulting in charges not owed, but demanded by defendants, and placed other illegal charges against plaintiff's loan account illegally.  Their acts demonstrates a pattern and practice of illegal foreclosure activity and corruption causing plaintiff damages and economic injury.

19.  Plaintiff alleges that the acts or omissions alleged are of a continuing nature and thus the applicable limitations period for filing each cause of action has not accrued, or been tolled and not expired.

20 - 34.- Reserved.

---

### FIRST CAUSE OF ACTION FOR NEGLIGENT DAMAGE [TO CREDIT RATING, CREDIT WORTHINESS, INCREASED TAX LIABILITY]
[Against Defendants Wells Fargo, only]

35.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 34, inclusive, as though fully set forth herein. Under Maryland law as articulated in the Pattern Jury Instructions-Civil, the standard of care imposed on a defendant under PJI 18.1, is "that degree of caution and attention with a person of ordinary skill and judgment would use under similar circumstances. What constitutes reasonable care depends upon the circumstances of a particular case." Moreover, "The violation of a statute, which is a cause of the plaintiffs' injuries or damages, is evidence of negligence," citing PJI 18.4.  The instructions define negligence as

"Negligence is doing something that a person using reasonable care would not do, or not doing something that a person using reasonable care would do. Reasonable care means that caution, attention or skill a reasonable person would use under similar circumstances" PJI 19.1. Causation is defined as "proximate and concurring" under PJI 29.10 as follows: "For the plaintiff to recover damages, the defendant's negligence must be a cause of the plaintiff's injury. [There may be more than one cause of an injury, that is, several negligent acts may work together. Each person whose negligent act is a cause of an injury is responsible.]" Clearly, the prima facie elements including act, duty, actual and legal cause and damages are imposed on a defendant doing business in the manner the defendants were and to which they are subject to its requirements as articulated in the jury instructions relating to Maryland law applicable in this action.

35.1.   It is a matter of judicial notice that banks and lenders who believe a borrower has breached the duty to pay back a loan, will affirmatively "report to credit reporting agencies [hereafter CRA]," all default acts by the borrower. This being a known consequence of the overall lending industry, it is absolutely foreseeable that a detrimental credit score may follow. Plaintiff urges the following query: "What if the default is improper or based on false or incorrect information and the report made to the CRA is factually false?" Thereafter, the credit report may show negatives and the score be lowered evidencing a poorer credit rating and thus defame and besmirch the creditworthiness of a borrower and their ability to borrow going forward compromising their right to have correct credit scores associated with their name and social security number. Damages in such a case are foreseeable. This has happened here as to each of the three defendant reporting agencies who have federal oversight under, inter alia, the FCRAct.

36.   At all times relevant herein, the Defendants, acting as Plaintiff's lender and loan servicer, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited to, accurate crediting of correct payments made by Plaintiff. Violation of their duty is alleged actually and proximately causing damages to plaintiff by defaming plaintiff's credit reputation [credit score] and credit standing, increased tax liability to both the state and federal tax reporting requirements, caused by errant understatement of payments exempt from income calculations and causing her financially induced emotional distress foreseeable as a consequence with actual physical manifestations which exceed the normal scope of damages permissible under the Note contract for breach of contract. Lending institutions and their agents and credit reporting agencies, named as individual Credit Reporting

Agencies, also have similar <u>duties of care</u> to avoid financial damages and losses. Some of the criteria and duties are stated under the Uniform Commercial Code especially sections 3 and 4 governing financial transactions. The governance of these institutions is in place to avoid foreseeable harm from errors in accounting of loan files and resultant damage to credit and credit worthiness, *inter alia.*

37.   In taking the actions alleged above, and in failing to take the actions as alleged above, the Defendants **breached their duty of care to Plaintiffs** in the calculating of the sums due under the obligation and of course, the servicing of Plaintiff's loan by, among other things, failing *to properly and accurately credit payments* made by Plaintiff's toward the loan causing legally and proximately a breaching of their duty by preparing and therefore consequentially, filing **false and inaccurate documents** including a Notice of Default, all illegally on the Subject Property without having the legal authority and/or proper reviewed and authorized documentation to do so, not only violating their duty of due care, but statutorily violating the requirements of resulting in **negligence *per se.*** Collectively, their activity has caused a second tier of <u>damage</u> to plaintiff's credit rating and record of the plaintiff herein causing a **drop in the credit evaluation** report from about 800, but due to the negative reports has plunged now to under 345. Plaintiff alleges the defendants conduct has caused a <u>loss of credit worthiness,</u> a valuable asset to plaintiff in buying and acquisitions in the market place and a right plaintiff worked decades to develop and perfect.

38.   As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiff suffered physically, mentally, including general and special damages in an amount to be determined at trial.

39.   Based on the statutory duties attendant to all qualifying deed of trusts in the state, further duties are imposed on lenders, loan servicers and trustee defendants herein.

40.   Plaintiffs allege that defendants are bound by these Maryland code requirements as incorporated by reference as appended at complaint's end.

41.   Plaintiffs allege that all defendants violated their duties of due care and breached each provision causing damages to plaintiffs.

43.   Plaintiff seeks such damages for injuries sustained by the breaching of these statutory duties which have caused injury to plaintiff in the sum of not less than $500,000.00

44. Reserved

## SECOND CAUSE OF ACTION FOR DECLARATORY JUDGMENT [2]

### [against all defendants sued herein]

45.     Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 44, inclusive, as though fully set forth herein.

46.     Plaintiff alleges that a good faith case and controversy has arisen concerning the prospective duties, rights and remedies incumbent upon the parties in their action by reason of defendants' claims to equitable title and rights thereunder. Equitable title vesting in any defendant as a beneficiary, loan servicer or trustee is challenged by plaintiff in their action as it any defendant's legal standing as a real party in interest. Included is the question of the duty of plaintiff to continue making payments to any defendant without a declaration of ownership of the note and concurrent right to foreclose under the deed of trust. Nor has any accounting been performed by any bank entity defendant to show the true sum of credits available to plaintiff and any unjustified charges levied on the loan account that are not enforceable or unjustified and subject to set off against the loan balance.

47.     Plaintiff asserts that their circumstance is a basis for declaratory relief to determine and quiet the conflicting assertions and claims among the various parties.

48.     Plaintiff asserts that the controversy involves rights and duties arising under a promissory note and deed of trust the ownership of which may have been abrogated, voided,

---

[2]   **RULE 57. DECLARATORY JUDGMENT**

These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. §2201. Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action.
*Notes*
(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 30, 2007, eff. Dec. 1, 2007.)
Notes of Advisory Committee on Rules—1937

The fact that a declaratory judgment may be granted "whether or not further relief is or could be prayed" indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary. A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding. Inasmuch as it often involves only an issue of law on undisputed or relatively undisputed facts, it operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion, as provided for in California (Code Civ.Proc. (Deering, 1937) §1062a), Michigan (3 Comp.Laws (1929) §13904), and Kentucky (Codes (Carroll, 1932) Civ.Pract. §639a–3).

The "controversy" must necessarily be "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936). The existence or nonexistence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared. The petitioner must have a practical interest in the declaration sought and all parties having an interest therein or adversely affected must be made parties or be cited. A declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case, but general ordinary or extraordinary legal remedies, whether regulated by statute or not, are not deemed special statutory proceedings.

cancelled, hypothecated, transferred or assigned or vitiated by the original lender or any successor regardless of title or designation.

49. Plaintiff asserts that if no defendant can prove by the evidence its inherent right to enforce the alleged note, no enforcement of the note or associated deed of trust is lawful.

50. Plaintiff asserts if the assertions of para. 49, be proven, the debt is lawfully reduced to an unsecured debt or may invalidate the note altogether, and such finding may be determined by their cause of action, jointly or separately with others as pled herein.

**THIRD CAUSE OF ACTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO ENJOIN FORECLOSURE SALE OF SUBJECT PROPERTY TO ENJOIN FORECLOSURE OR COLLECTION ON THE NOTE OR ENFORCEMENT OF THE DEED OF TRUST [Violation of Foreclosure Protection Acts including the Failure of any Defendant to Comply with Pre-foreclosure and Pre-Non-Judicial Foreclosure Requirements Permitting Injunction of Foreclosure] FRCP Rule 65, et al., (by verified Complaint)**

51. Plaintiffs incorporate herein by reference the allegations made in all preceding paragraphs and causes of action inclusive, as though fully set forth herein.

52. In this case at bar, undeniable evidence exists that defendants have violated statutes and at common law including those supporting the issuance of a preliminary injunction [see below] –including those defendants sued in the first cause of action for Negligence, and their successors in interest, assignees, agents and other Does 1-20 acting on their behalf.

53. Plaintiff is entitled to injunctive relief to stop all reconveyance of their subject property for reasons stated. See *Ex Parte Application* if co-filed asserting grounds and good cause for issuance of a TRO and OSC re preliminary injunction, hereafter.

54. The content of *their verified complaint* are sufficient to satisfy the requirements of FRCP Rule 65.

55. As alleged in the co-filed Ex Parte Application for TRO and Preliminary Injunction, plaintiff alleges that each defendant has engaged in conduct sufficient to warrant the relief so sought and without which plaintiff will forever lose a valuable unique asset, plaintiff's primary residence and townhome on which plaintiff was not deficiently late in paying on a note as pled *inter alia.*

56. Plaintiff seeks relief consistent with fairness and equity and will suffer irreparable harm without an injunctive order by writ being issued.

57. -74. Reserved

## FOURTH CAUSE OF ACTION

### FOR FRAUDULENT INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS [Except the CREDIT REPORTING AGENCY DEFENDANTS]

75.     Plaintiffs incorporate herein by reference the allegations made in prior paragraphs, inclusive, as though fully set forth herein. [3]  Plaintiff was deceived about a benefit that would materially affect her position contractually under the Promissory Note, see *infra*. The fraudulent statements were of a continuing nature commending from 2006 and their effect still on going as of December, 2015.

76.     Plaintiff had a telephone contact on or about March, 2006, **prior to** the loan being "declared" to be in default by defendant Wells Fargo Bank [WF] (in which World Savings Bank was the original lender) in regard to reforming or "novating" the Note to better terms and payments. Plaintiff was called at least **five times** in which a "loan negotiator" whose name was Brad Jones.   This person stated by phone that, "I am from World Savings Bank." "We have a new and exciting program for you, our good paying borrowers.  If you don't pay your deed of trust payment for 3 consecutive months, we can guarantee you a new Note and better terms than those under your present Note. **Everyone in this program will qualify and your monthly rate will decrease.**" "If you comply by missing the 3 months of payments we promise you that you will

---

[3]  To prevail on a claim of fraudulent misrepresentation in Maryland, a plaintiff must establish, by the heightened evidentiary standard of clear and convincing evidence:

"(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." VF Corp. v. Wrexham Aviation Corp., 350 Md. 693, 703 (1998), quoting Nails v. S&R, 334 Md. 398, 415 (1994).

The defendant must actually be aware of the falsity, or at least the potential for falsity.  The requirement concerning knowledge of the falsity or reckless indifference as to the truth of the representation means either the defendant's actual knowledge that the representation was false or the defendant's awareness that he does not know whether the representation is true or false. Ellerin v. Fairfax Savings, 337 Md. at 231, 652 A.2d at 1124.

Negligence or misjudgment, "'however gross,'" does not satisfy the knowledge element. Ellerin, 337 Md. at 232, 652 A.2d at 1125, quoting Cahill v. Applegarth, 98 Md. 493, 502, 56 A. 794, 796 (1904). See also VF Corporation and Blue Bell, Inc. v. Wrexham Aviation Corp., 350 Md. 693 (1998).

A defendant must have the intent, the scienter, to cheat another: "It is well recognized under Maryland law that an action for fraud cannot be supported … without any design to impose upon or cheat another." VF Corp. v. Wrexham Aviation Corp., 350 Md. 693, 703 (1998).
The complaining party though, must have reasonably relied on the defendant's representations.  To determine whether one party's reliance upon the allegedly fraudulent statements of another party is reasonable, a court looks to all the facts and circumstances present in the particular case. "In determining whether reliance is reasonable, a court is required to view the act in its setting…." Parker v. Columbia Bank, 91 Md. App. At 361-362.

**not be defaulted or foreclosed upon.**" "This arrangement will last for the life of the Note without limit as long as you miss the 3 months, until the termination of the Note after the 30th year."

76.a.  Plaintiffs believed this was a reliable opportunity for a safe financial benefit and in reliance agreed to comply with the offer. Their forbearance occurred in compliance with bank's promise. Plaintiff learned later that the promise was a ruse, false statement but relied upon said statement thus, damaging plaintiff as calculated below when on the 4th month, a payment in the novated sum was accepted by World Savings Bank through an {EFT aka} automatic electronic funds transfer, plus a $200.00 fee charged for the "modification" validating the Novated agreement by acceptance.

76b.   At the time of defendant World Savings Bank's promise, the Notes' monthly payment was $2,200 on and 80% loan added to the 20% Home Equity loan of $580, **totaling $2,780.00**. The **new novated monthly payment** [altering only the 80% loan payment] was to be **$1,650.00** in total, a reduction of $500.00 per month. This was to be active from July 15, 2006 to the present December 2015, thus a total reduction over the past 9 years and 5 months in the sum of **$62,700.00**. This sum amounts to either a legal **set off** or a **credit** due the plaintiffs. Although a novation was secured and agreed to by plaintiffs payments to the beneficiary banks based on the statements of Mr. Jones, neither WSB, Wachovia, WF nor any successors in interest would honor the arrangement or legally perform.  This triggered a *fraudulent induced reliance* on the promises made and actual damages of over $62,700.00, to date.

76.c.  Plaintiffs allege that after she forbore making payments, and made a payment to WSB in the stated novated sum and after WSB electronically withdrew said sums from plaintiff's account as payment in full, WSB, WF and Wachovia stated that the "novation was rejected." . Plaintiff called Wachovia and spoke again to Mr. Randy Green in October 2007 and later to Mr. James Harper for Wells Fargo in December, 2008, both conversations reduced to a written Memorandum authored by plaintiff and mailed to both WF and Wachovia, who stated shockingly: "We have no record of your loan being novated and you are in default and will have to be foreclosed upon." Plaintiff was devastated about this denial of what was stated to be a guarantee, actually becoming physically ill from learning of this new information from the bank representatives. Plaintiffs then sent another payment in the new sum which too, was deducted electronically by WF. Plaintiff believes the sums paid and accepted but were not properly credited thus causing the loan to show in error, arrearages due. Eventually the default notice in May, 2012 issued and was received by Plaintiffs. Defendants and each of them failed to consider the sums due

under the **enforceable novation guaranteed to Plaintiff**, which would only require payments in a lesser sum. **In fact, a proper accounting would reveal that on this date, the loan could _not_ have been in default, because the new contract would have diminished the monthly payments due as plead,** *ante.*

**76d. Plaintiffs** urge a second tier of fraud by reason of the acts of WF and Wachovia banks by breaching yet a second portion of the novation agreement, vis., by <u>commencing a foreclosure</u> when it was promised one would not be undertaken if plaintiff complied with the forbearance agreement and paid the lesser monthly sum promised. These fact as well, support the fraudulent intent of defendant and the denial of a material benefit offered and accepted by plaintiff.

77. To the extent the acts and representations of defendants were intentional or reckless and made with no intent to perform, punitive damages in a sum not less than $5,000,000.00 are sought in addition to economic and non-economic damages and recoverable as a remedy under state law governing punitive damages.

REQUEST FOR CONSOLIDATION OF RELATED REMOVED CASE

78. Plaintiff alleges that plaintiff was damaged as alleged and continues to be damaged, now with the threat of foreclosure which was formerly pending in Md. State Court and the subject of a consolidation motion within the Removal bringing that case into this court's venue. As a related case, the Removed case should in the interest of justice be consolidated with this matter.

79 to 82.   Reserved

---

**FIFTH CAUSE OF ACTION FOR BREACH OF GOOD FAITH AND FAIR DEALING** [4]

**[AGAINST DEFENDANTS WELLS FARGO; WACHOVIA BANK only]**

---

[4] The **Restatement (Second) of Contracts § 205** provides: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Comment d to § 205 states:

**Good faith performance.** Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance. Similarly, the Uniform Commercial Code defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." U.C.C. § 1-201(b)(20) (amended 2003).

83.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 82, inclusive, as though fully set forth herein.

83.1 Plaintiff alleges defendants breached the **promissory Note** and secondary promises [to modify the payments] alleged all to plaintiff's damages. Plaintiff alleges that all contracts are governed by laws of Maryland. A promissory Note is a contract. A novation is a modification to a contract. Plaintiff and defendants were parties to two novations. The terms of contracts may be express or implied. Some terms of the bilateral contract "Note" and the subsequent novations affecting monthly duties to pay which formed the basis of the claims for promissory estoppel that were breached by these named defendants WF and Wachovia, regarding the two novation agreements.

83.2 Plaintiff alleges that Promissory Note and the Novations in question contained **implied covenants of good faith and fair dealing** which was breached by reason of the above alleged conduct by defendants and Does 1-20, inclusively. Plaintiff further alleges that a strong public policy is encouraged by enforcement of implied terms of fair dealing as in their case at bar. **Fraud** is patently not good faith or fair dealing.

84.     Plaintiff's original loan agreement or Note, set forth dates by which monthly principal and interest payments were due, and when late fees and other charges could be assessed. An implied term of the purchase money loan contract in writing was a **duty to keep accurate and honest records of all transactions** *vis a vis* the plaintiff and defendants and each of them and Does 1-100. **Excess charges were applied wrongfully** to plaintiff's account and entered in defendants' book and accounting records in the sum alleged in prior causes of action, including excessive interest not due or payable. The Promissory Note did not provide protections to borrowers from such acts by the lenders or their assigns as part of the express terms of the contract. However all contracts have **implied contractual duties and terms** under Maryland law which make illegal any act which promotes, fosters or condones a harm to a person's financial reputation or credit by the application of wrongful acts and omissions. Such wrong and dishonest entries breached the contract as they purported to show plaintiff in arrears, late, tardy, and in default, which was not the case. These breaches formed the basis of and show a false history of late payments and caused a false default on the note.

85.     Subsequent note holders continued, by succession, the breaches by never **correcting the accounting errors caused initially by these sued defendants and foreclosing parties,** and their agents and Does 1-100, inclusively.

86.    The Defendants breached the loan terms and Note be failing to keep accurate records of all income received, credited, charges and payment histories breaching the duty alleged herein and the contract thereby damaging plaintiff in sums to be proven at trial.

87.    A second tier of breach of contract was the promises made to plaintiff that they would not be defaulted or foreclosed upon.  Damages as pled, ante, are alleged.

88. to 106. Reserved

SIXTH CAUSE OF ACTION FOR

QUIET TITLE

(AGAINST WELLS FARGO)

107.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 106, inclusive, as though fully set forth herein.

108.    Plaintiffs are the equitable owners of the Subject Property which has the following legal description: LOT 15, AS SHOWN ON A PLAT ENTITLED "DORSET AT VILLAGES OF DORCHESTER," AS SHOWN ON PLATS THEREOF RECORDED AMONG THE LAND RECORDS OF ANNE ARUNDEL COUNTY, MARYLAND IN PLAT BOOK 258, PAGES 16-17, PLAT NO'S. 13442-13443. THEREOF RECORDED AMONG THE LAND RECORDS OF ANNE ARUNDEL COUNTY, MARYLAND, BEING IN THE 3RD ELECTION DISTRICT.THE IMPROVEMENTS THEREON BEING KNOWN AS 1552 PENZANCE WAY, HANOVER, MARYLAND, COUNTY OF ANNE ARUNDEL, STATE OF MARYLAND, Parcel ID# 04-884-90218375.

109.    Plaintiffs seek to quiet title against the claims of Defendants and ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD ON PLAINTIFF'S TITLE THERETO; and DOES 1 through 100 Plaintiff DISPUTES that any named defendant has any right to assert title interests in the subject property by any instrument including deed of trust  and no right to entertain any rights including the right to foreclosure, offering the Subject Property for sale at a trustee's sale, et al.

110 Plaintiff alleges that there is no requirement to "plead" quiet title for plaintiff to allege any offer to aka tender of the sums due, where all sums purportedly due have been disputed and

such a dispute is known in the pleadings and put in issue lest. Plaintiffs allege that they have tendered or offered to tender all sums due and not disputed as required to plead quiet title.

111   Reserved

112.   Plaintiffs seek to quiet title as of September 19, 2005 the date of finance purchase. Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiffs alone and that any Defendant and each of them be declared to have no interest estate, right, title or interest in the subject property nor their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property.

113. – 122. Reserved.

**SEVENTH CAUSE OF ACTION FOR ACCOUNTING**

**[AGAINST WELLS FARGO; WACHOVIA; WORLD SAVINGS BANK TRUST, ONLY]**

123.   Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 112, inclusive, as though fully set forth herein. Plaintiff claims right to set off for credits due and owing but not yet credited and pray for an accounting of the loan file.

124.   Plaintiff demands an accounting of their entire loan account from any and all defendants and Does who have any knowledge, information, duties or rights under the original loan and Note concerning the transaction to determine the correct amount of the loan, note, payments made, payments due, credits due and payoff balance and that responsible defendants pay the cost of their cause of action as part of the damages awarded to plaintiff.

124.a.  Plaintiff alleges that there is no statutory or common law requirement that there be a "fiduciary" relationship to impose their remedy as the questioned sums paid, not credited, and the consequence of their uncertainty justify their remedy in equity. There is no way to correct this morass of bookkeeping irregularities without an order to account for sums "due" then paid.

**EIGHTH CAUSE OF ACTION FOR VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT - 15 U.S.C. 1601 *et seq* [AGAINST WELLS FARGO; WACHOVIA AND CREDIT REPORTING AGENCY DEFENDANTS, ONLY ]**

125.   Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 124.a, inclusive, as though fully set forth herein.

126. Plaintiff alleged that defendants are defined as debt collectors within the meaning of federal version of the *Fair Debt Collection Practices Act* 15 U.S.C. 1601 et seq. See § 808, in

particular. [5] In doing acts complained of herein defendants alleged violated the act and damages are called out by statute for each violation for which plaintiffs believe total over fifteen in number of violations. The dates of the illegal denial of the new terms commenced July, 2006 and continued to the present [December, 2015] and ongoing.

127.   Plaintiff alleges that provisions of the act were violated *including but not limited to* **demanding of sums for payments to WF and Wachovia banks that were based on incorrect calculations under the Note that were clearly, not due or owed ["not expressly authorized by the agreement] by plaintiff.** Such acts by defendants violate the FDCPA, *inter alia.* The law does not allow demand for collection of an unproven or disputed debt as plaintiffs alleged has occurred here.

128.   Plaintiff asks for damages under the Acts and for all expenses, fees and sanctions allowed thereunder according to proof.

129 to 137. Reserved

## NINTH CAUSE OF ACTION FOR SPECIFIC PERFORMANCE BY PROMISSORY OR EQUITABLE ESTOPPEL [AGAINST All Defendants, except defendant Credit Reporting agencies]

147.   Plaintiff repeats and re-pleads the entirety of the above allegations by incorporating same. Plaintiff alleges that the contract that was orally entered was part of the scheme to defraud plaintiff. Plaintiff should be allowed under a theory of promissory estoppel, et al., to present facts to prove their oral agreement under Md. Stats. which reflects the Restatement of Contracts on point and holds, in pertinent part,

> "Where a contract, which is required by law to be in writing, is prevented
> from being put into writing by the fraud of a party thereto, any other party
> who is by such fraud led to believe that it is in writing, and acts upon
> such belief to their prejudice, may enforce it
> against the fraudulent party."

---

[5] **§ 808.  Unfair practices [15 USC 1692f]**

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

148.   Based on the above allegations, plaintiff states a cause of action for specific performance by equitable or promissory estoppel was created and is enforceable, based on the promise of a novated contract for reduced monthly payments and that no foreclosure will be imposed based on such promises as alleged more fully in the **Fraud** cause of action. Set offs or credits cannot now be denied and defendants must be estopped to deny the agreements consistent with the content of the FRAUD cause of action alleged, *ante.*

## TENTH CAUSE OF ACTION FOR BREACH OF WRITTEN AND ORAL CONTRACT
### [both express and implied] AGAINST ALL DEFENDANTS

149.   Plaintiff repeats and re-pleads the entirety of the above allegations by incorporating same.  Breach of contract seminally stems from the existence of an agreement. [6] Further, the contract [vis., promissory note] was breached. This fact is asserted, as well under Maryland law articulated in the jury instructions. [7] The breach was induced by a deceptive inducement in violation of state law. [8] Damages have been alleged with specificity herein above and are awardable as a proper remedy in sums lost, and in set offs for overcharges. [9]

---

[6] **MPJI-Cv 9:2**
ELEMENTS OF A CONTRACT

A contract consists of the following five elements:
(1) There must be two or more parties;
(2) The parties must have legal capacity to make the agreement;
(3) The parties must have mutually agreed to the contract;
(4) The parties must have stated with reasonable certainty what they have undertaken; and
(5) There must be consideration for the promise or promises.

[7] **MPJI-Cv 9:25**
MATERIAL BREACH

A material breach by one party relieves the other party from the duty of performance. A breach is material if it affects the purpose of the contract in an important or vital way.

[8] **MPJI-Cv 9:28**
INDUCING BREACH OF CONTRACT

A party to a contract cannot recover for a breach of that contract if he or she knowingly caused the other party to commit the breach.

[9] **MPJI-Cv 10:29**
DAMAGES AS A REMEDY FOR BREACH OF CONTRACT —
COMPENSATORY DAMAGES FOR NONPERFORMANCE

150. Plaintiff alleges that the terms of the Promissory Note and Deed of Trust and all implied terms that may be read into the terms under the law of Contracts were breached in two tiers of breaches, as follows.

151. First, the Note contains implicit terms that protect a borrower from being taken advantage of by allowing that any change in the terms be enforced by borrower regardless of the existence of any writing where the borrower has reasonably relied upon the promises made by the lender, loan servicer or trustee which beneficially change by novation and or modification of terms, the borrower's position but which the borrower intentionally or negligently omits from a writing.  TWO SUCH PROMISES were made to the borrower-Plaintiffs in that as alleged in the cause of action herein for FRAUD and intentional infliction of emotional distress, by the lenders or their agents and assignees promised to discount the monthly payments as alleged, *ante*, if the borrower would "stop making payments for 90 days." [10] When plaintiff complied the beneficial promise to reduce the payments was materially breached and refused. [11] The tender of funds to World Savings Bank with acceptance of the payments supports enforcement of the Novation in plaintiff's favor.

152. Plaintiffs allege a <u>second identifiable separate breach of contract</u> damaging their interest by contracting to **not foreclose** or declare a default as a material part of the novation, and abate any effort to do so as part of the new contract developed as alleged in the preceding paragraphs.  Their provision was breached materially damaging the plaintiff. [12] The damages are

---

The plaintiff is entitled to be placed in the same situation as if the contract had not been broken. The damages therefore are the profits the plaintiff would have made had the contract been performed. These damages are arrived at after deducting the amount that it would have cost the plaintiff to have performed the contract.

**MPJI-Cv 10:30**
**DAMAGES AS A REMEDY FOR BREACH OF CONTRACT —**
**CONSEQUENTIAL DAMAGES**

In an action for breach of contract, the plaintiff may recover those damages which naturally arise from the breaking of the contract. Those damages are the consequences of breaking the contract which the defendant had reason to foresee would take place or such damages as may reasonably be supposed to have been contemplated by both parties when they made the contract.

**MPJI-Cv 10:31**
**DAMAGES INCURRED IN RELIANCE ON OR IN**
**PREPARATION OF CONTRACT**

A party harmed by breach of contract by another party may recover any expenses or losses incurred. This amount should be reduced by any expenditures that the breaching party can show the wronged party would have incurred if the contract had been performed.

[10] See Fraud cause of action, *supra*.
[11] See ¶ 140, *supra*.
[12] Ibid.

seen in the loss of down payment, excess charges including overpayment of principal and interest for each month after the agreed to reduction under the novation agreement, excessive fees, charges, forced placed insurance, and miscellaneous fees unjustified. All charges are subject to a legal SETOFF as a matter of state law.

153. But for their secondary breach independently and jointly with the first tier breach, the plaintiff has been injured economically in a sum of $500,000.00 or greater as proven at trial.

154-157. Reserved

## ELEVENTH CAUSE OF ACTION FOR VIOLATION OF RACKETEERING INFLUENCED CORRUPT ORGANIZATIONS ACT [RICO] [AGAINST WELLS FARGO, WACHOVIA, WORLD SAVINGS BANK ONLY]

159. Plaintiff alleged that defendants and each of them have taken and committed acts that violate the *Racketeering Influenced Corrupt Organizations Act* [aka *RICO*] under 18 USC 1961-1964, et al.

160. Plaintiff alleges all other named defendants have willfully violated the prohibitions set forth in the RICO statute at 18 USC 1962 which states in pertinent part:

§ 1962 (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities [13] on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under their subsection if the securities of the issuer held by the purchaser, the members of their immediate family, and their or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or

---

[13] Securities arguably, includes the use of the value of securitized Trusts as a vehicle for promotion of corrupt and profligate monetary gain.

control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or **collection of unlawful debt.**

(d) It shall be unlawful for any person to **conspire** to violate any of the provisions of subsection (a), (b), or (c) of this section.

160.a.  Moreover, plaintiff alleges a right vests to plaintiff's benefit as follows:

§ 1964  (c) Any person injured in their business or property by reason of a violation of section 1962 of their chapter ... shall recover **threefold [3x] the damages** he/she sustains and the **cost of the suit,** including a **reasonable attorney's fee,** except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

(d) A final judgment or decree rendered in favor of the United States in any criminal proceeding brought by the United States under their chapter shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the United States.

161.  Plaintiff alleges that the sections 1343, 1341, 1344 place the acts of defendants within the purview of the statute and thus must be imposed on each targeted defendants. *Inter alia,* institutional bank fraud is included as prohibited corrupt practices amounting to racketeering under sub section (B).

61.  Plaintiff alleges the following sections found in §1961 apply.

162.  Plaintiff has sufficiently alleged a **false debt [one not owed, due or overinflated] was being collected,** that at least **two efforts and attempts were made to falsely collect,** that the evidence shows **intent to defraud** and cheat plaintiff in a scheme to fabricate the truth of the error then add additional **false charges to the loan, then and now, never due.**

163.  The alleged facts proffered in the above causes of action are incorporated here, to avoid redundancy and which support the specific pleading requirements under Rule 8, Aschroft and Twombly. But for the acts of the defendant and each of them and Does, plaintiff would not

have been harmed.  Plaintiff seeks damages and statutory penalties in a sum allowed by law and in no even less than $50,000,000.00 against the perpetrating defendants and Does.

164.-169. Reserved

## TWELVETH CAUSE OF ACTION FOR VIOLATION OF FAIR CREDIT REPORTING ACT - 15 USC 1681, et seq. [against all defendants]

170.  Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 169, inclusive, as though fully set forth herein.

171.  Plaintiff alleges that her individual and joint credit standing which is item of personal property and creditworthiness and credit reputation has been damaged by reason of the aforementioned acts of defendants as seen in the improper lowering of credit scores, from 800 to 345.  Plaintiff made complaints in writing to the CRA defendants on or about October 2012, June 2013, and July 2014, March 2015 from the time of filing of this action. None of the CRAs responded properly to these complaints nor offered to correct the errant credit reporting that was disseminated from each. The publishing of incorrect information violates the act and remedies are available in such a case.

172.  Plaintiff's credit history has now been altered and rendered to be substandard and reflective of a bad credit rating *vis a vis* the norm of the industry standards, thereby.

173.  Plaintiff in compliance with the FDRA **contacted to dispute the credit scores** and history contesting the data. Over **60 days passed without defendants making contact and without a resolution of the unlawful deterioration of the scores** the credit reporting agency defendants are required to keep accurate. Plaintiff has been damaged thereby and entitled to relief as called out in the state and federal FCRA statutes. Plaintiff seeks equitable relief to remedy and order all credit reporting agencies to correct their essentially defamatory rating and for damages against the defendants who proximately caused their harm in sums allowed under the law.

## THIRTEENTH CAUSE OF ACTION FOR VIOLATION OF DUE PROCESS AND EQUAL PROTECTION UNDER ARTICLE XIV OF THE U.S. CONSTITUTION [AGAINST ALL DEFENDANTS EXCEPT CREDIT REPORTING AGENCIES]

174. Plaintiff hereby repeats and repleads all allegations previously asserted above.

175. Plaintiff alleges that she is an American citizen, African American by ethnicity, female by gender and a senior citizen protected under the United States Constitution and statutory schemes protecting her from age and gender discrimination under the law, including but not limited to 42 U.S.C. 1983, et al., based on the original lender World Savings [WS, hereafter]  and

by application of the law of agency, contract and vicarious liability, its successors in interest, including WF and Wachovia banks, each supported, condoned and acted in a scheme and espoused as a pattern, policy and practice, but cryptically applied, using a form of race, age and gender profiling affecting the **original loan and the secondary novation** by acts showing she was subjected to different, disparate illegal treatment in the formation and development of the loan different from others younger and non-males and as a result was discriminated against by the offering of a clearly disparate loan terms that because of those invidious descriptors  was overcharged her for the property [by at least $75,000] , heightened interest rates [by 3 points minimum] illegally, falsely advertised goods and services to her under the Lanham Act, charged her increased monthly payments [overcharging by at least $500] not charged to others, added forced placed insurance [adding monthly payments against her loan and thus, to her payment requirements and added excessive charges and illegal fees during the term of the loan continuing to the present and other requirements that made the loan disparate, economically against the limits placed on lenders of purchase money capital under federal law. This discriminatory based act is known in the secondary lender market as "the hustle," which disregards certain common guidelines in allocating loans to those who were invidiously profiled African-Americans of advanced age as well as females who are senior citizens thus placing them in undesirable loans economically desperate.

176.  Plaintiff alleges that if title has vested at all in Wells Fargo Bank, and successor to WS Bank, Wachovia and Wells Fargo, and the use of lawyers and plaintiffs and others, as part of a well-crafted scheme to defraud and discriminate against plaintiff, have fraudulently commenced and prosecuted a wrongful foreclosure action in the Maryland Circuit Courts [trial court], referenced above. The evidence will show that in proffering evidence within that action, WSB, WF and Wachovia using as their legal agents lawyers **Diane S. Rosenberg**, and **Kristine D. Brown** as Plaintiffs in the state case, collected and proffered in a court of law false and fraudulent documents in the filing known as an *Order to Docket*, utilized as part of its overall foreclosure litigation protocol and procedure, allows documents to be improperly vouched for by individuals with no personal knowledge, attorneys with similar deficits, used counterfeit and false affidavits and documents that were not genuine, not signed by plaintiff, not certified properly to be those properly kept in the usual course of business by business entities, and falsely vouched for by lawyers representing Wells Fargo and other entities participating, and in doing so violated plaintiff right to due process under the 5th and 14th Amendments to the U.S. Constitution guaranteeing

those rights by the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," citing the statute. Such a scheme to foreclose is invidious on its face and must be declared unconstitutional as presently constituted.

177.    Plaintiff also asserts that in doing the acts complained of Wells Fargo, Wachovia, and others who claim ownership of the Note in trust [originally in a trust in the name of World Savings, as trustee] have illegally and foreseeably cheated and deprived plaintiff from federal and state tax benefits to which she is entitled under Internal Revenue Codes and statutes, but in doing so have defrauded the government of the United States of America based on a fraudulent benefit scheme that is provided to investors in Trusts comprised of invested Notes and securities who pay less taxes under a Real Estate Deed of trust Investment Trust Conduit [REMIC] tax avoidance tool. Beneficiaries of the trust [aka investors] pay less or no taxes on the dividends under the scheme using the plaintiff's Note as part of the collateral paying interest under the REMIC.

177a. Plaintiff further alleged damages and injury be reason of this discriminatory pattern and practice by the two target perpetration entities. In or about January 13, Plaintiff asked Wells Fargo for a payoff balance to which WF refused to respond thus thwarting and breaching the allowable purpose of the Note and discharging of the debt. The end result is that plaintiff's Note is not owned by the trustees nor Wells Fargo who the trustees claim is the beneficiary.

178.   Plaintiff alleges that as a direct consequence of these acts her civil rights were damages and injured and she seeks the sum of not less than $5,000,000.00 against all bank lending defendants including WF and Wachovia, WB, Rosenberg and Brown, the defendants herein.

179.   Plaintiff alleges <u>discriminatory application of the foreclosure based laws in the state of Maryland and its attorney general as the highest law enforcement official of Maryland</u> by allowing judicial proceedings in such actions that fail to protect the interest of landowners and borrowers who are sued by means of an "Order to Docket" limited to foreclosure cases which allows the use of an unconstitutional method of speeding up the foreclosure process by using affidavits and certifications not allowed in other proceedings including what is commonly called lawyer vouching by bank plaintiff attorneys who have insufficient personal knowledge of facts about which they assert to pass the test of filing mandatorily necessary documents including Notes evidencing indebtedness and Deeds of Trust [aka Deed of trusts] evidencing liens on the Notes but wholly without any foundational criteria that would be expected under the Evidence Statutes calling for witness to acts and events that have some percipience, when in fact they have little or

none to support the authenticity or genuineness of documents about which they proffer to the courts. Such acts are grossly violative of due process and equal protection and challenged hereby.

## REQUEST FOR INJUNCTIVE RELIEF AND STAY ON ALL PENDING AND FUTURE STATE BASED FORECLOSURE PROCEEDINGS PENDING ORDER OF THIS COURT [FRCP RULE 65].

180. Plaintiff seeks orders enjoining the use continued use of such practices and procedures forthwith and for a declaration and order that such are per se unconstitutional and illegal in the state of Maryland.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against the Defendants and each of them, jointly and severally, as follows:

1.   For a declaration of the rights and duties of the parties by declaratory judgment;

2.   For issuance of an Order restraining foreclosure sale;

3.   To cancel, set aside and vacate the recordation of any Notice of Default;

4.   To reform all deeds in favor of plaintiffs name.

5.   To quiet title in favor of Plaintiffs as pled.

6.   For compensatory, special, general, statutory and punitive damages according to proof against all Defendants.

7.   For attorney's fees according to contract.

8.   For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorneys fees according to proof.

9.   For reasonable costs of suit and such other and further relief as the Court deems proper.

10.  For TRO and preliminary injunction as pled and moved in the TRO applications.

11.  For orders correcting the damage caused to each plaintiff's credit scores affecting their credit worthiness and for orders correcting errant scores according to proof under the FCRA.

December 15, 2015

///

/s/ Paula J. Webber, Authorized p.s.p

Paula Webber,
Plaintiff in pro se
1123 State Route 3 North, Ste 244
Gambrills, Md [21054]
Tel: 410-799-7288

---

**Addendum**

**2011 Maryland Statutes**

Senate Bill 205/House Bill 366 went into effect July 1, 2011. This law changes Real Property 7-105.1. In a foreclosure, an order to docket or a complaint must have an affidavit as to accuracy of information.

Related to Senate Bill 205/House Bill 366, Senate Bill 450/House Bill 412 also changes Real Property 7–105.1. If the lender loses the note, the court will not accept a lost note affidavit, unless the affidavit says why the note is lost and what they did to try to get it back.

**2010 Maryland Statutes**

A new <u>law</u> that went into effect July 1, 2010 requires that an application to change the terms of the loan or help the borrower leave the property be sent to the borrower and record owner of a residential property at least 45 days before a foreclosure action is filed. There are new <u>rules that</u> are associated with the law.

The lender has to complete a report no later than 30 days before the foreclosure sale that says whether the borrower qualifies for a change in the terms of the loan or other program. The order to docket the foreclosure needs to include either 1) an affidavit saying the lender has completed a report on whether the borrower qualifies for any programs to change the loan or simplify leaving the property or; 2) a preliminary report saying why the report has not been finished.

If the home is owner occupied, the lender also needs to send a form to request foreclosure mediation to be filled out by the borrower. Foreclosure mediation is a conference held by the Office of Administrative Hearings to discuss programs to change the loan or simplify the borrower leaving the property. The borrower must file the request foreclosure mediation within 15 days of the mailing or service of the final loss mitigation affidavit from the lender along with a $50 filing fee. The Maryland Judiciary has a <u>form</u> that borrowers can file to request a waiver of the foreclosure mediation filing fee.

**2008 Maryland Statutes**

In April 2008 Maryland enacted emergency legislation intended to protect homeowners.

The new laws:

1. Require that deed of trust loans are only issued after the lender reviews whether the person applying for the loan can repay it. **Read the Law: <u>MD Commercial Law § 2-127</u>**
2. Require that deed of trusts include the deed of trust originator name and license number. **Read the Law: <u>MD Real Prop. § 3-104.1</u>**
3. Require that a lender send a Notice to Foreclose to the homeowner at least 45 days before filing to foreclose, or 90 days after a default in the conditions of the deed of trust, whichever is later **Read the Law: <u>MD Real Prop. § 7-105.1</u>**
4. Make the seller wait at least 45 days after service of the Notice to Foreclose (for a total of at least 135 days from the default) to sell the property **Read the Law: <u>MD Real Prop. § 7-105.1(e)</u>**
5. Allow the homeowner to stop foreclosure by paying the balance owed until one business day before the sale of the property. **Read the Law: <u>MD Real Property § 7-105.1</u>**
6. Make it a crime to knowingly make or use any deliberate misstatement, misrepresentation, or omission during the deed of trust lending process knowing that it will be relied on by someone else involved. This statute is known as the Maryland Deed of trust Fraud Protection Act. **Read the Law: <u>MD Crim. Proc. Title 13, Subtitle 4, MD Real Prop. Title 7, Subtitle 4</u>**
7. Authorize the Attorney General to investigate violations of the Maryland Deed of trust Fraud Protection Act. **Read the Law: <u>MD Real Prop. § 7-405</u>**
8. Require brokers to disclose finder's fee arrangements **Read the Law: <u>MD Comm. Law § 12-805</u>**
9. Requires foreclosure consultants to be licensed. **Read the Law: <u>MD Real Prop. § 7-308</u>**
10. Prohibits prepayment penalties for many deed of trust loans **Read the Law: <u>MD Comm. Law § 12-105</u>**
11.

**2010 Maryland Rules**

The Court of Appeals <u>passed</u> updated Rules reflecting new legislation passed in 2010.

Rule 14-202 includes definitions of "Final Loss Mitigation Affidavit," "Foreclosure Mediation," "Loss Mitigation Analysis," "Owner-Occupied Residential Property," and "Preliminary Loss Mitigation Affidavit."

Rule 14-205 adds the requirements of the new law to the conditions required for the foreclosure to go forward and 14-206 has a note that in the case of an immediate foreclosure, the new law does not apply.

Rule 14-207 requires a statement about whether the property is owner-occupied and if the final loss mitigation affidavit is attached in the order to docket or a statement that the property is not owner-occupied if it isn't. The Rule also requires lenders to produce any other documentation required by some federally related loans.

Rule 14-208 requires that the law be satisfied before a sale of the property.

Rule 14-209.1 describes when the lender may advertise the sale of foreclosed owner-occupied residential property and outlines the procedure for requesting foreclosure mediation.

Rule 14-211 includes the time for filing a stay of the sale of foreclosed property and includes a note that states that improperly denied loss mitigation can be a defense to a motion to foreclose.

Rule 14-212 provides the option of alternate dispute resolution for borrowers who cannot request foreclosure mediation.

**2008-2009 Maryland Rules**

In 2008, new rules were drafted governing the process for foreclosures. These rules are in Title 14 of the Maryland Rules. The new rules went into effect May 1, 2009:

- Maryland Rule of Procedure 14-101
  - Foreclosure sale must happen in the county where property is located. If the property is on more than one county, the sale will be in the county where the case was filed.
- Maryland Rule of Procedure 14-102
  - If the foreclosure purchaser is entitled to possession and the person in actual possession refuses to deliver possession, the purchaser may file a motion for judgment awarding possession of the property. If the purchaser does not yet have title to the property, s/he has to give a legal reason for awarding possession.
- Maryland Rule of Procedure 14-201
  - The remedies described in this section may not be the only remedies under law.
- Maryland Rules of Procedure 14-202
  - "Residential property" means real property with four or fewer single family dwelling units
- Maryland Rules of Procedure 14-203
  - A case for foreclosure can be filed in any county where any part of the property is located.
- Maryland Rules of Procedure 14-204
  - An action to foreclose on the lien may be brought by either a party given "power of sale" by the lien documents or by a secured party under an "assent to decree."
    - A "power of sale" provision in a deed of trust gives a party (usually the lender) the ability to foreclose on the property and sell it. **Read the Law: MD Real Prop. § 7-105**
    - Under an "assent to decree" provision, a borrower allows secured parties to foreclose on a lien in case of default upon decree of the court. The deed of trust for the property may be foreclosed by the trustee (title company) or beneficiary (lender). **Read the Law: MD Real Prop. § 7-105**
    - An assent to decree or power of sale cannot be used unless the holders of at least 25% of the debt agree.
- Maryland Rules of Procedure 14-205
  - In order to foreclose, the debt must have been recorded and the debt must be in default.
  - In accordance with Real Property § 7-105.1, an action to foreclose cannot be field until 90 days after a default and 45 days after a Notice of Intent to Foreclose. **Read the Law: MD Real Prop. § 7-105.1**
- Maryland Rules of Procedure 14-206
  - A secured party may petition to have notice requirements waived if:
    - the debt secured by the lien instrument was obtained by fraud or deception;
    - no payments have ever been made on the debt;
    - the property subject to the lien has been destroyed; or
    - the default occurred after all stays have been lifted in a bankruptcy proceeding.
- Maryland Rules of Procedure 14-207

- A case under a power of sale is begun by filing an order to docket. No process will be issued.
- A case under an assent to a decree is begun by filing a complaint to foreclose. No process will issue.
- If the debt has no power of sale or assent to a decree, then the secured party may file a complaint to foreclose.

- Maryland Rules of Procedure 14-208
  - For a lien without assent to a decree or power of sale, a foreclosure of residential property requires service according to rule 14-209.
  - After a hearing a judge may order a sale before the end of proceedings.
- Maryland Rules of Procedure 14-209
  - In a foreclosure of residential property without assent to a decree or power of sale, all papers have to be served to borrower and record owner.
  - Papers may be served in person or to any resident of age and competency at the property.
  - After two good faith efforts to serve process, papers may be served by mailing papers via certified, first-class mail and posting papers at property.
- Maryland Rules of Procedure 14-210
  - Before selling the property, the seller will publish the notice of the sale at least once a week for three weeks. The first publication must be 15 days or more before the sale and the last publication has to be within one week of the sale.
  - **Notice must also be sent within 30 days of sale via certified mail and first-class mail to:**
    - **the borrower**
    - the record owner
    - the holder of any subordinate interest in the property
    - "occupant" at the address of the property
    - More than 15 days before the sale, the seller must send notice to the county where the property is located.
  - The seller also needs to give notice to any person who has a subordinate interest in the property that he learns of.
  - The seller must also file an affidavit asserting the seller's compliance with the notice requirements.
  - Borrower, record owner, or party to lien have 15 days to file a motion to stay and dismiss after service.
  - The motion must:
    - be under oath or supported by an affidavit
    - state the legal argument why the court should dismiss the case
    - include any supporting documentation
    - state whether there are any collateral actions involving the property
    - state the date the party was served
  - The court may dismiss the motion for not being filed on time, for not complying with the rules, or for failing to state a valid defense
- Maryland Rules of Procedure 14-212
  - In any case where a motion to stay and dismiss is filed and not dismissed, the court may order alternate dispute resolution
- Maryland Rules of Procedure 14-213
  - A bond put be filed with the court by the seller
- Maryland Rules of Procedure 14-214
  - The rules for foreclosure sale:
    - Power of Sale
      - Secured parties or those named in ther lien document can conduct sale
      - If foreclosing a deed of trust, a trustee (or substitute) conducts the sale
    - Payment terms follow the terms of the lease, or if not specified, whatever is reasonable
    - Assent to a Decree
      - Sale conducted by trustee or substitute
      - Payment terms provided in court order
    - No Power of Sale or Assent to a Decree
      - Sale by trustee appointed by court
      - Payment terms are whatever is reasonable

- Maryland Rules of Procedure 14-215
  - Procedure for ratification of sale follows 14-305 and 14-306.Upon ratification, seller conveys property to purchaser.
- Maryland Rules of Procedure 14-216
  - Other who have interest in the property may, in the period between sale and ratification, make a claim on the proceeds of the sale.
  - At any time within 3 years of the sale a secured party may make a motion for deficiency judgment.
- Maryland Rules of Procedure 2-122
  - Amends service of process requirements
  - 

**2008 Maryland Regulatory Amendments**
COMAR: Title 09, Department of Labor, Licensing and Regulation. Subtitle 03 Commissioner of Financial Regulation

- 09.03.06.03 Licensing Requirements for Financial Institutions
- 09.03.11.01 Definitions
- 09.03.11.02 Information in Recorded Security Instrument
- 09.03.12.02 Notice of Intent to Foreclose
- 09.03.12.03 Notice of Filing

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon the following counsel and the State Court of Record via [Personal Delivery] or [facsimile] or by U.S. Mail in accordance with the USDC Rules of Civil Procedure on _____, 2015:

Attorneys or Parties served:

State of Maryland
Office of the Attorney General
Brian E. Frosh, Attorney General
200 St. Paul Place
Baltimore, MD 21202

Diane S. Rosenberg
Rosenberg & Associates, LLC
7910 Woodmont Ave. Suite 750
Bethesda, MD 20814

Kristine D. Brown
Shapiro Brown & ALT, LLC, et al
10021 Balls Ford Road, Ste 200
Manassas, VA 20109

Treanor Pope & Hughes, P.A, et al
500 Ybiork Road
Towson, Maryland 21204

Brian Cassin, CEO
Experian
475 Anton Blvd
Costa Mesa, CA 92626

Wells Fargo Bank
420 Montgomery Street
San Francisco, CA 94104

World Savings Bank Trust
1901 Harrison St
Oakland, CA 94612

Wachovia Bank
420 Montgomery Street
San Francisco, CA 94104

Tarek Aly
3231 Superior Lane, Suite A-26
Bowie, MD 20715

Richard F. Smith, Chairman/CEO
EQUIFAX
1558 Peachtree Street NE
Atlanta, GA 30309

James M. Peck, President/CEO
TransUnion
555 W Adams St
Chicago, IL 60661

By: _____ Authorized
                    , Affiant